Whipple and another, Respondents, vs. City of South Milwaukee, Appellant.

Lambrecht Creamery and others, Respondents, vs. Same, Appellant.

Omar Baking Company, Respondent, vs. Same, Appellant.

*April 30—June 4, 1935.*

*Clarence J. O'Brien,* city attorney, for the appellant.

*Herbert L. Mount* of Milwaukee, for the respondents Whipple and Hathaway Baking Company.

For the respondents Lambrecht Creamery, Bonnett, and Elliott there was a brief by *Wengert & Moeller* of Milwaukee, and oral argument by *Eugene L. Wengert.*

For the respondent Omar Baking Company there was a brief by *Miller, Mack & Fairchild,* and oral argument by *Paul R. Newcomb,* all of Milwaukee.

FRITZ, J. The judgments under review were based upon the court's adjudication that the plaintiffs' method of doing business by delivering their respective products along established routes to their established or regular customers, pursuant to pre-existing arrangements with such customers, was not hawking or peddling and was not prohibited by that ordinance. In section 2 thereof, the words "hawkers" and "peddlers," as used therein, were defined as including "all individuals, whether principals or agents or employees, who go about the city from place to place transporting goods, wares, or merchandise for the purpose of vending, selling, disposing or delivering the same to any person or persons." As the evidence established, without dispute, that Whipple, Van Waggoner, Bonnett, and Elliott, as service men for their respective employers, did go about the defendant city from the place of one customer to the place of the next, transporting goods, wares, or merchandise for the purpose of vending, selling, disposing, and delivering them to those persons, their acts were within the definition in the ordinance of the words "hawkers" and "peddlers." There is no limitation in that definition because of which it is not

equally applicable to the plaintiffs' acts in regularly going from place to place for the purpose of selling or delivering to established customers, or for the purpose of making sales and deliveries of such of plaintiffs' products as such customers then chose to purchase and did usually purchase, although they were not contractually bound in advance to do so.

However, regardless of whether the plaintiffs' methods of doing business constituted soliciting, hawking, or peddling, as those terms were usually defined at common law, or are defined in the ordinance, there arises in these cases the question whether the only provisions in the ordinance that prohibit the doing of those acts by hawkers or peddlers, without having first obtained a license, are unconstitutional and invalid because they are discriminatory against persons selling goods "for mercantile houses from cities other than South Milwaukee." The only prohibitory provision in the ordinance, in so far as it requires hawkers and peddlers to have a license, is in section 4, which is as follows:

"It shall be unlawful for any transient merchant, solicitor, hawker, or peddler to vend, sell or dispose of, or to solicit orders for the sale of goods by sample, order, or otherwise for mercantile houses from cities other than South Milwaukee, from house to house at retail, or to offer to vend, sell, or dispose of any goods, wares, merchandise, produce, goods, or any other thing about the streets, avenues, alleys, or any place whatsoever within the City of South Milwaukee without first having obtained a license from said city for that purpose, and having paid the license fee therefore as hereinafter provided and prescribed."

Thus, under that provision, the vending, selling, disposing of, or soliciting orders for the sale of goods by sample, order, or otherwise, without having a license therefor, is prohibited only "for mercantile houses from cities other than South Milwaukee." In other words, by virtue of that clause, sales

for mercantile houses located in South Milwaukee are impliedly exempted from that prohibitory provision; and that exemption is as applicable to the vending, selling, or disposing of goods from house to house at retail as it is to the act of soliciting for the sale thereof.

Consequently, by reason of that exemption in favor of mercantile houses located in the city of South Milwaukee, the impediment or burden which it was proposed to impose by those prohibitory provisions upon the plaintiffs and others similarly situated, is not equally applicable to the pursuits of all engaged in the same acts under like circumstances and conditions. Therefore those provisions are discriminatory as against the plaintiffs and others similarly situated, and by reason of that discrimination, they are in violation of sec. 1, art. I, Wis. Const., and sec. 1, amendm. XIV, U. S. Const. By that amendment, as the court said in *Barbier v. Connolly,* 113 U. S. 27, 31, 5 Sup. Ct. 357, 359, it was "undoubtedly intended not only that there should be no arbitrary deprivation of life or liberty, or arbitrary spoliation of property, but that equal protection and security should be given to all under like circumstances in the enjoyment of their personal and civil rights;" that, in respect thereto, "all persons should be equally entitled to pursue their happiness and acquire and enjoy property," and "no impediment should be interposed to the pursuits of any one except as applied to the same pursuits by others under like circumstances;" and that "no greater burdens should be laid upon one than are laid upon others in the same calling and condition." Likewise, with that amendment and sec. 1, art. I, Wis. Const., in mind, we said, in *Christoph v. Chilton,* 205 Wis. 418, 421, 237 N. W. 134:

"That both the constitutions of the state of Wisconsin and of the United States condemn laws which grant special privileges to a favored class cannot be doubted. That the very spirit of our institutions is against the granting of

special privileges to a favored class is indeed elementary;" and also that:

"While the legislature, in proper cases, clearly has the right to classify persons, property, occupations, or industries, it must always be borne in mind that the equal protection of the laws is guaranteed, and that if any classification made by a statute grants to one class rights or privileges which are denied to another class under the same or substantially similar conditions, it offends against the principle of equal protection of the law."

The principles controlling legislative action, in respect to classifications for the purpose of either taxation or regulation, so as to avoid the denial of the equal protection afforded by the federal and state constitutions, were reiterated and applied by this court in holding a statute licensing and punishing peddlers and transient merchants invalid because of illegal discrimination by reason of exemptions in several respects, in *State v. Whitcom,* 122 Wis. 110, 99 N. W. 468. Thus, the court, in condemning the discriminatory exemptions, then said:

"Among the most glaring of the classifications is the separation of manufacturers, mechanics, nurserymen, and farmers who have owned the goods they hawk for a term of three months from all the rest of the community. We have spurred imagination in vain for a reason germane either to a purpose of taxation or of police regulation which could have induced this segregation. . . .

"The further discrimination permitting the manufacturer, mechanic, or nurseryman to sell his own products is hardly less false. Is the wooden nutmeg any less meretricious because the man who brings it here and peddles it is hired by the Connecticut mechanic of whose lathe it is the fruit than if the same man were employed by that mechanic's next-door neighbor, a merchant? . . . Clearly, such classification as this cannot have sprung from any general public purpose, nor be germane to any. It is not equal protection of the laws to all people similarly situated with reference to that law. . . .

"The discrimination in favor of persons selling only at wholesale or only to dealers is clearly a false one if this is a tax measure. No conceivable reason exists why a person peddling goods, who confines himself to one kind of customers, should not contribute to the revenues as much as another man selling to other kinds of customers. . . .

"Another discrimination in favor of the blind, deaf and dumb, cripples and partially disabled veterans of the war of the Rebellion, is surely false if this is a police measure. If deceit and swindling is to be feared in disproportionate degree from peripatetic traders, and is less easy of punishment, all such reasons apply with equal force to the members of this exempted class as fully as to the rest of the community. . . . If, on the other hand, this be a tax measure, an exemption of people partially disqualified from means of livelihood could be justified, if at all, only upon the assumption that they, as a class, are distinct from the rest of the community as either actual or potential paupers, so that it might be the part of wisdom in the legislature to exempt them from burdens upon possible forms of industry, to the end that the very moneys which would otherwise be exacted from them, with perhaps considerable additions, might not at once have to be paid out of the same treasury for their support. The principle that special provisions in aid of veteran soldiers can only be supported if they involve the element of pauperism has already been decided by this court in *Juneau County v. Wood County*, 109 Wis. 330, 334, 85 N. W. 387."

Likewise, in *Wisconsin Asso. of Master Bakers v. Weigle*, 167 Wis. 569, 168 N. W. 383, this court said, in holding a statute licensing the operation of bakeries unconstitutional because of a discriminatory exemption from the payment of license fees, in favor of a bakery using ovens or baking devices of less than a certain area of baking surface:

"It is argued that, even if the classification be upheld, the exemption of part of the licensed class from the payment of any license fee is discriminatory. This contention is sound and rests upon the most elementary principles. . . . Having in the exercise of the police power declared that all bakeries in the interest of the public health should be licensed and that a fee for such licensing should be exacted to cover

in whole or in part the cost of licensing and supervision, upon what principle can it be said that a part of the licensed class can be wholly exempted? Such a provision clearly offends against the rule of equality. While it is within the province of the legislature within established rules to make classifications and subclassifications and to determine the amount of fees to be paid by each of the respective classes and subclasses, it is nevertheless beyond the power of the legislature to wholly exempt a part of the licensees and cast the whole burden upon the nonexempted subclasses."

Adherence to the principles, because of which the exemptions involved in *State v. Whitcom, supra,* and *Wisconsin Asso. of Master Bakers v. Weigle, supra,* were held invalid, necessitates the conclusion that the exemption provided in the ordinance under consideration, in favor of the proprietors of mercantile houses located within South Milwaukee, is likewise unconstitutional. That conclusion is in accord with the annotation in 61 A. L. R. 337, that:

"As a general rule, state statutes or municipal ordinances discriminating against nonresidents of the state or nonresidents of a political subdivision of the state, either by refusing to grant licenses to such nonresidents or by granting them on different terms, as charging nonresidents a higher fee or adding other burdens, where not required under the police power of the state for the protection of the local citizens, are unconstitutional and void as violating art. IV, § 2 . . . or § 1 of the Fourteenth amendment to the United States Constitution."

The following decisions fully support that statement: *In re Irish,* 121 Kan. 72, 250 Pac. 1056; *Hair v. City of Humboldt,* 133 Kan. 67, 299 Pac. 268; *Hamilton v. Collins,* 114 Fla. 276, 154 So. 201; *State v. Mitchell,* 97 Me. 66, 53 Atl. 887; *Commonwealth v. Hana,* 195 Mass. 262, 81 N. E. 149; *State v. Orange,* 50 N. J. Law, 389, 13 Atl. 240; *City of Elgin v. Winchester,* 300 Ill. 214, 133 N. E. 205; *City of Saginaw v. McKnight,* 106 Mich. 32, 63 N. W. 985; *State ex rel. Greenwood v. Nolan,* 108 Minn. 170, 122 N. W. 255; *Mayor and City Council of Havre de Grace v. Johnson,* 143

Md. 601, 123 Atl. 65; *Nafziger Baking Co. v. City of Salisbury,* 329 Mo. 1014, 48 S. W. (2d) 563; *Town of Pacific Junction v. Dyer,* 64 Iowa, 38, 19 N. W. 862; *State v. Osborne,* 171 Iowa, 678, 154 N. W. 294; *Ward Baking Co. v. City of Fernandina, Fla.* (D. C. Fla.) 29 Fed. (2d) 789; *Healy v. Ratta* (C. C. A.), 67 Fed. (2d) 554; *Grantham v. City of Chickasha,* 156 Okla. 56, 9 Pac. (2d) 747.

The following statement, in the case last cited, in respect to an exemption, is in point in relation to the exemption involved in the cases at bar, to wit:

"Its primary purpose operates to grant an apparent and real advantage to the resident merchant of the city of Chickasha who has an established place of business within the corporate limits of said city, exempting such merchant from a revenue tax which it seeks to impose on the outside business by reason of the fact that such business does not maintain a place of business within the city. It is discriminatory in its application and in reality attempts to build a barrier wall around the incorporate limits of said city, and attempts to eliminate and prohibit all competitors who have no fixed or established place of business within the corporate limits of said city. It is a classification studiously, artfully, and comprehensively drawn, but nevertheless discriminatory and violative of the aforesaid provisions of the state and federal constitutions."

In point also is the decision in *Watts v. Rent-a-Ford Co.* 205 Wis. 140, 236 N. W. 521, 237 N. W. 276, in which a statute, that required those who rented motor vehicles for hire to file a bond or policy of insurance to indemnify persons sustaining injury or damage due to the negligent operation of such automobile with the city clerk of the city where the vehicle was ordinarily kept for hire, was held discriminatory and in violation of the Fourteenth amendment of the federal constitution, because persons renting automobiles who resided outside the corporate limits of cities were not required to furnish any such bond or policy, while those residing within such limits were so required. On the other hand, the decisions in *Singer Sewing Machine Co. v. Brick-*

*ell,* 233 U. S. 304, 34 Sup. Ct. 493, 498, 58 L. Ed. 974, and *Campbell Baking Co. v. City of Harrisonville* (C. C. A.), 50 Fed. (2d) 670, are not necessarily in conflict with the precedents cited above, when the true meaning of the alleged discriminatory provisions involved therein is duly taken into consideration. In those cases, the exemption from the other provisions in an enactment which required persons selling or delivering merchandise within a specified municipality to first obtain a license to do so, was created by a provision which, in the first case cited, read but "this section shall not apply to merchants selling the above enumerated articles at their regularly established places of business." No provision in the enactment made any exemption in favor of local merchants in respect to any sale and delivery made elsewhere than at their regularly established place of business. On the contrary, in respect to sales made elsewhere than at their regular established places of business, all were required to have a license regardless of whether they had or did not have a regularly established place of business within the municipality. That is manifest from the court's statement that the "complainant is engaged in doing business of both kinds; and with respect to the itinerant sales it is subject to the tax under the section referred to." *Singer Sewing Machine Co. v. Brickell, supra,* 34 Sup. Ct. 493, page 498. Consequently, there was no exemption in the enactment involved in those cases, which resulted in a discrimination as to anyone in respect to sales made elsewhere than at the merchant's regularly established place of business.

It follows that, as section 4 of the ordinance under consideration is discriminatory and void, because of the exemption in favor of mercantile houses located in South Milwaukee, and that as there is no other basis in law for the prosecutions and proceedings enjoined by the judgments under review, those judgments must be affirmed.

*By the Court.*—Judgments affirmed.