ZAWERSCHNIK, Appellant, vs. JOINT COUNTY SCHOOL COMMITTEE OF MILWAUKEE and WAUKESHA COUNTIES, Respondent.

HANSEN, Appellant, vs. SAME, Respondent.

*November 11—December 6, 1955.*

418

420

422

For the appellants there was a brief and oral argument by *Joseph A. Barly* of Milwaukee.

For the respondent there was a brief by *Oliver L. O'Boyle,* corporation counsel of Milwaukee county, and *C. Stanley Perry,* first assistant corporation counsel, and oral argument by *Mr. Perry.*

STEINLE, J. The first question presented on behalf of these appellants is: Did the Joint Committee abuse or exceed its power with reference to the reorganization of the school districts? It is contended that the Joint Committee did not comply with sec. 40.303 (4) (a), Stats. 1949, which in part provided that:

"(a) In counties in which a city of the first class is located, on or before July 1, 1953, and in all other counties on or before July 1, 1951, file with the superintendent of public instruction a plan for the development of the educational system of the county. The plan shall provide a comprehensive program of improved educational opportunity for the school children of the county and shall provide for the establishment of substantial administrative districts covering grades from kindergarten or first through twelfth which may be the pattern for the future development of the educational system of the county. The plan shall be based upon reliable data on census, enrolment, location, financial status, geography, and the general needs of each community of the county. If the committee shall fail within such respective times to prepare and file such plan the committee shall automatically be removed from office and it shall be the duty of the county board within ninety days to elect a new committee with different personnel who shall immediately succeed the committee removed from office, which committee shall prepare such a plan within one year from the date of its appointment. . . ."

The provision in question was not in existence when in the instant matter the proceeding for the consideration of

reorganization was initiated, or when the Joint Committee rendered its order. Ch. 40, Stats., pertaining to school districts, was revised in 1953, and under the revision the development of a plan and the filing thereof, as was required in sec. 40.303 (4) (a), Stats. 1949, is not directed.

Notwithstanding that a plan was not required, the record reveals that a plan was developed by the Milwaukee county school committee for its entire county and that the same was substantially followed since 1950. It appears that in its order herein the Joint Committee substantially complied with that plan in so far as it affected the area in question.

Appellants challenge the reason assigned by the Joint Committee for the reorganization of the territory affected by the order. Included amongst such reasons was the fact that the area in Joint School District No. 8, town of Greenfield and village of West Milwaukee, was separated by a southwestern extension of the city of Milwaukee and would likely be annexed to said city; that 11 children in the West Milwaukee area required transportation; and further, to reduce disparity in the financial ability to support education from a range of twelve to one to a range of less than three to one. Appellants contend that the reorganization was effectuated for the sole purpose of reducing the school taxes in the city of West Allis, and that a school district may not reorganize for the purposes of reducing school taxes in one district when the educational standards or opportunities are not enhanced. They maintain further that the Joint Committee's order is arbitrary, unreasonable, and confiscatory in that it detaches $36,181,320 or 77.53 per cent of the tax valuation of Joint School District No. 8, town of Greenfield and village of West Milwaukee, and attaches it to the reorganized district which has a tax valuation of $298,524,600, and thereby leaves a remnant district which will be burdened by excessive taxes and whose financial ruin will result when, in the adjustment of taxes and liabilities under sec. 66.03, Stats., it will be obliged to pay to the reorganized district the amount of

$412,072,72. Appellants contend further that the tax base of $8,847,000 remaining to School District No. 8, town of Greenfield and village of West Milwaukee, is insufficient to maintain a substantial administrative school district,—a condition which is contrary to statute and the Milwaukee county school committee plan. Appellants also maintain that the Joint Committee's order was made for the purpose of eliminating the voting population of 3,500 in Joint School District No. 8, town of Greenfield and village of West Milwaukee, so as to effectuate a majority vote from the unincorporated areas. Lastly, under the claim of abuse of power, appellants submit that since a new district was created, the Joint Committee was in error in failing to designate the number of board members to be elected as provided in sec. 40.07, Stats. 1951.

The respondent submits that its reasons for the reorganization are valid and sound. It maintains that the record discloses no evidence indicating that the purpose of the reorganization was to reduce school taxes in West Allis. It contends that the arrangement effectuated neither the creation of a new school district nor the re-creation of the West Milwaukee district. It submits that appellants' contention with respect to the change in tax base and payment in adjustment of assets and liabilities is mere speculation and conclusion, and that although if true, could be avoided by the taxpayers involved, especially by deferring the time of payment, and that the matter is political rather than judicial; that the tax base of the remaining portion of Joint School District No. 8, town of Greenfield and village of West Milwaukee, is greater than that of a number of other school districts in the county; and that if satisfactory to those concerned, the remaining portion might well be attached to a school district in the town of Greenfield. Respondent submits further that the interest of the Joint Committee was in the development of a compact district rather than in any concern or contention as to who would be eligible to vote in the

referendum. Respondent points out that the program as formulated was not an arrangement under sec. 40.07, Stats. 1953, which treats with consolidation of common school districts, but was actually a program under sec. 40.801 (1) and (2) which provides for the attachment to a city school district of territory outside the city, and for the right of residents of the annexed territory to vote for members of the school board of the district to which their territory is attached.

In an appeal under sec. 40.03 (5), Stats., the court's sole function is to determine whether there was jurisdiction and whether there was or was not an unlawful abuse of power. *Perkins v. Peacock* (1953), 263 Wis. 644, 658, 58 N. W. (2d) 536; *Joint School Dist. v. Waupaca, etc., County School Comm.* (1955), ante, p. 100, 72 N. W. (2d) 909.

In its determination of appellants' challenge to the order of the Joint Committee on the ground of abuse of power upon the bases as outlined above, the trial court properly applied principles of law that have become well established in the jurisprudence of this state with reference to issues such as presented.

Of paramount importance here are the following considerations: The legislature may vest power in proper boards or officers to establish school districts and change the boundaries of existing districts. *School Dist. v. Burnett County School Comm.* (1952), 262 Wis. 484, 55 N. W. (2d) 874. A county school committee (or joint committee) possesses the power to order the creation, alteration, consolidation, or dissolution of school districts within its jurisdiction. Sec. 40.03 (1), Stats. Where different conclusions as to where the lines of a district should be, may be drawn from the evidence submitted, the conclusions adopted by the legislative body cannot be interfered with. *La Crosse v. Elbertson* (1931), 205 Wis. 207, 212, 237 N. W. 99. When it appears that a determination which is challenged as being unreasonable, arbitrary, or an unequal exercise of power is actually

fairly debatable, the court may not substitute its judgment for that of the legislative body charged with the primary duty and responsibility of determining the question. *Zahn v. Board of Public Works* (1927), 274 U. S. 325, 328, 47 Sup. Ct. 594, 71 L. Ed. 1074; *State ex rel. Normal Hall, Inc., v. Gurda* (1940), 234 Wis. 290, 299, 291 N. W. 350.

The duty of forming and altering school districts is purely municipal and administrative, and has no respect whatever to personal or property rights. *State ex rel. Moreland v. Whitford* (1882), 54 Wis. 150, 155, 11 N. W. 424; *School Dist. v. Callahan* (1941), 237 Wis. 560, 568, 297 N. W. 407.

The alteration of school districts in such manner and through such instrumentalities as the legislature prescribes is not the taking of property, nor does it deprive any person of his property, within the meaning of constitutional inhibitions in these respects, and statutes, in authorizing such changes in school districts, do not deny equal protection of the laws or due process of law. *School Dist. v. Callahan, supra.*

Whether the boundaries of a school district should be changed is not a question of law or fact for judicial determination, but purely a question of policy, to be determined by the legislative department. Such a matter presents a question of political expediency for the legislative department. The courts have nothing to do with the policy, wisdom, justice, or fairness of such matters. They present questions for the consideration of those to whom the state has intrusted its legislative power, and their determination of them is not subject to review or criticism by the courts. *State ex rel. Zilisch v. Auer* (1928), 197 Wis. 284, 221 N. W. 860, 223 N. W. 123.

In *State ex rel. Horton v. Brechler* (1925), 185 Wis. 599, 604, 202 N. W. 144, it was said:

"The principal argument made against the validity of the order of the county committee on common schools is that

the committee exceeded its authority in attempting to include territory not prayed for by the petition, and because the power conferred by the statute (subs. (9), (10), sec. 39.13), and upon the state superintendent by sec. 39.01, Stats. 1921, constitutes a delegation of legislative power, and such statutes are unconstitutional.

"The formation of school districts, however, is not a direct legislative function. Sec. 3, art. X of the state constitution requires the legislature to 'provide by law for the establishment of district schools, which shall be as nearly uniform as practicable.' From the very beginning of state government the power to form school districts has been conferred upon town boards—official bodies which are nearest to those who are interested in the formation of school districts. The legislature has not attempted to set up any required standard or to make the action of the town board dependent upon the existence of any facts or circumstances. The town board has been permitted to exercise its discretion and form school districts that will in its best judgment promote the cause of education. From the earliest days the appeal from the decision of the town board in such matters to the state superintendent has been authorized. In *State ex rel. Moreland v. Whitford,* 54 Wis. 150, 11 N. W. 424, the power of the state superintendent in this respect was challenged as being unconstitutional. This court there held that his power was quasi-judicial in nature and that it did not offend against any constitutional provisions.

"By comparatively recent legislation the county committee on common schools was created and an appeal from the town officers acting upon a change of school-district boundaries was authorized to that body, the appeal to be tried 'in the manner, within the time and with the same result as in case of trial on appeal to the state superintendent.' The power thus conferred upon the county committee on common schools is the same as that conferred upon the state superintendent, and as there is no constitutional objection to the exercise of this power by the state superintendent, there can be none to the exercise of the same power by the committee on common schools. The law, therefore, authorizing the appeal to the county committee on common schools is not unconstitutional." See also *School Dist. v. Callahan, supra.*

A school district is a quasi-municipal corporation. It is an agent of the state for the purpose of administering the state's system of public education. *Iverson v. Union Free High School Dist.* (1925), 186 Wis. 342, 353, 202 N. W. 788.

In *State ex rel. Zilisch v. Auer, supra* (p. 293), the court quoted with approval the following statement in *Hunter v. Pittsburgh* (1907), 207 U. S. 161, 178, 28 Sup. Ct. 40, 52 L. Ed. 151:

" 'Municipal corporations are political subdivisions of the state, created as convenient agencies for exercising such of the governmental powers of the state as may be intrusted to them. . . . The state, therefore, at its pleasure, may . . . expand or contract the territorial area, unite the whole or a part of it with another municipality, repeal the charter and destroy the corporation. All this may be done, conditionally or unconditionally, with or without the consent of the citizens, or even against their protest. In all these respects the state is supreme, and its legislative body, conforming its action to the state constitution, may do as it will, unrestrained by any provision of the constitution of the United States. Although the inhabitants and property owners may, by such changes, suffer inconvenience, and their property may be lessened in value by the burden of increased taxation, or for any other reason, they have no right, by contract or otherwise, in the unaltered or continued existence of the corporation or its powers, and there is nothing in the federal constitution which protects them from these injurious consequences. The power is in the state, and those who legislate for the state are alone responsible for any unjust or oppressive exercise of it.' " See also *School Dist. v. Callahan, supra.*

In the light of these stated principles of law, the learned trial court in a comprehensive written opinion examined and analyzed in detail each objection raised by appellants in their challenge of the order of the Joint Committee, and upon such bases rendered its findings of fact, conclusions of law, and order (judgment). The court determined that the Joint

Committee had not abused or exceeded its power. Manifestly the matters considered and determined by the Joint Committee were fairly debatable. We find no error with respect to the court's decision in this regard.

The appellants next challenge the order of the Joint Committee on the ground that said committee had no jurisdiction to make the order because: (a) There is no provision in the statute authorizing the county school committee to *detach* part of another school district, (b) the Waukesha county school committee acting jointly had no authority to make an order dividing or affecting other school districts in Milwaukee county.

The term "alteration" as it appears in sec. 40.03 (1), Stats., connotes "detachment" and "attachment." It is recognized that county school committees employ the terms "detaching" and "attaching" when altering school-district territory in manner as here. *Endeavor-Oxford Union F. H. S. Dist. v. Walters* (1955), 270 Wis. 561, 72 N. W. (2d) 535; *Joint School Dist. v. Waupaca, etc., County School Comm.* (1955), ante, p. 100, 72 N. W. (2d) 909. The type of change contemplated by the term "alteration" in sec. 40.03 (1) is no different than that meant by the term "alter" in sec. 40.06 (1) and where the terms "detachment" and "attachment" are specifically indicated as a method of alteration.

With reference to their position that the Waukesha county school committee lacked authority to participate in the making of the Joint Committee's order dividing or affecting other school districts in Milwaukee county, appellants contend that it was the legislative intent under sec. 40.02 (5), Stats., to limit jurisdiction to cases where a school district or part thereof was in one county and a district or part thereof was in an adjoining county, and that only under such circumstances could the two committees consolidate the adjoining district into one. We cannot agree that the legislature intended such limitation. It appears that prior to the reorganization under

the order, part of the territory embraced in Joint School District No. 6, town of Greenfield in Milwaukee county and town of New Berlin in Waukesha county was situated in Milwaukee county and another part in Waukesha county. In a reorganization program all of the members of a Joint Committee have jurisdiction and vote upon all phases of the proposed reorganization. It does not appear that the legislature's intention was otherwise, for were it so, inextricable confusion would result,—a condition which manifestly would not be desirable or reasonable. We find no merit to appellants' contention in this regard.

The appellants next contend that the Milwaukee county school committee was not legally appointed, and that hence it was without jurisdiction to have made the order. Three specifications are advanced with reference to this position. The first is that in the appointment of the number of members of the Milwaukee county school committee there was failure of compliance with sec. 40.303 (1), (2), (3), Stats. 1949, and sec. 40.02, Stats. 1953. The second specification is that provisions of sec. 40.303 (1), (2), (3), Stats. 1951, were violated in that the education committee of the Milwaukee county board of supervisors did not nominate the several members, nor await the thirty-day period, and did not elect school-committee members at the annual meeting. Further, it is contended, there was no taking of office on January 1st following the election as required. Further, that four members instead of three from incorporated areas were elected.

The third specification relates to a claim that the office of all school-board members terminated when the legislature's enactment changing the terms of office to three years, became effective.

Respondent maintains that the Milwaukee county school committee was a validly constituted body at all times, and possessed jurisdiction to participate with the Waukesha county school committee in making the order in question.

The several considerations encompassed by appellants' objection in this regard challenge the qualifications of certain members of the Milwaukee county school committee who have served on this committee during the pendency of the proceedings in question. It is claimed that the committee was composed of four members who represented incorporated areas, instead of three, as directed by statute; that one member became automatically ineligible when the unincorporated area where he resided was annexed to an incorporated area; and that the written resignation of one member became effective when it was presented, and that he was ineligible to have served in the period thereafter and up to the time of the acceptance of the resignation; that the terms of office of the members of the committee expired when the new enactment became effective.

The trial court determined that sec. 40.02 (1), Stats. 1953, and its predecessor, sec. 40.303 (1), Stats. 1951, were valid enactments and that the committee was a *de jure* governmental unit. It also found that all of the committee members were at least *de facto* officers who possessed their office and discharged their duty under color of authority as defined in *Ekern v. McGovern* (1913), 154 Wis. 157, 142 N. W. 595, and *Schoonover v. Viroqua* (1944), 245 Wis. 239, 14 N. W. (2d) 9. At the hearing upon the appeal the court also had before it of record the judgment in a *quo warranto* proceeding heard before the Hon. RONOLD A. DRECHSLER, one of the judges of the circuit court for Milwaukee county, wherein the qualifications of the various members of the committee here challenged, were attacked, and where it was determined that said committee members held their office lawfully. Appeal was not taken from the judgment rendered by Judge DRECHSLER. The court here determined that the decision of Judge DRECHSLER was determinative of the issue before it, and that it was bound by said judgment.

The challenge by appellants is actually a collateral attack upon the title to the office of several of the members of the

committee. In *Joint School Dist. v. Waupaca, etc., County School Comm.* (1955), ante, p. 100, 72 N. W. (2d) 909, it was held that the right of a school-committee member to continue to function in relation to his office may be tested only in *quo warranto* proceedings, and that until his title to office is divested by proper authority, his continuing official actions are deemed valid. The appeal from a school-committee order is not a *quo warranto* proceeding. Extrinsic evidence of a judgment in a *quo warranto* proceeding is admissible upon such appeal. Evidence other than the record in a *quo warranto* proceeding respecting qualifications of the committee members is inadmissible in proceedings upon appeal from a school-committee order. Although certain of the particulars raised here regarding the qualifications of some of the school-board members may not have been presented in the *quo warranto* proceeding referred to, nevertheless they are of a nature to be considered only in a *quo warranto* proceeding, and since they were not so presented, the court is precluded from considering them in its disposition of this appeal.

The decision of the court with respect to this objection, is sustained.

A further issue presented upon this appeal concerns the constitutionality of secs. 40.03 (6) (a) and 40.807 (2), Stats. 1953, and sec. 40.53 (2) and (6), Stats. 1951.

Sec. 40.03 (6) (a), Stats. 1953, in so far as material provides in part as follows:

". . . such order [of the school committee] shall not become effective until it has been approved at such election by both a majority vote of the electors residing within all of the territory outside the city or village limits of any city or village involved in the proposed reorganized district voting at such election and by a majority vote of the electors residing within the city or village limits of all cities and villages involved in the proposed district voting at such election."

It is the position of appellants that such provision denies equal protection of the laws in violation of sec. 1, art. XIV, of

the amendments, U. S. constitution. Appellants submit that the statute is unreasonable, unjust, arbitrary, and discriminatory in that it classifies cities having a large population with villages having a relatively smaller population,—in this case a city of the second class having a population of 25,000 with a village of 3,500,—and also in classifying unincorporated areas into a separate group. They maintain that the creation and payment of an obligation imposed upon the taxpayers' property—in this case the payment of the sum of $412,072.72 by taxpayers of Joint School District No. 8, town of Greenfield and village of West Milwaukee, for the 77.53 per cent of their interest in the detached area—creates a personal as well as a property right. Relying on *State ex rel. Brown v. Haney* (1926), 190 Wis. 285, 209 N. W. 591, and *Barth v. Shorewood* (1938), 229 Wis. 151, 282 N. W. 89, they submit that classification must (a) be based on substantial distinctions which make one class really different from the other; (b) the classification must be germane to the purpose of the law; and (c) the characteristic of each class should be so far different from those of other classes as to reasonably suggest at least the propriety, having regard to the public good, of substantially different legislation. Cities and villages, they assert, are not within the same constitutional legislation.

The legislature within its discretion could have provided for the reorganization of school districts by school committees without referendum. The action of the school committee under such circumstances clearly would have been binding upon all taxpayers and electors of the several districts involved, without their having had a direct vote in the matter.

The consolidation of a smaller municipality with a larger one does not offend the constitution. In 2 McQuillin, Mun. Corp. (3d ed.), p. 453, sec. 8.22, it is declared that:

"In the absence of constitutional limitation upon the power of the legislature, it is no objection to consolidation that a smaller municipality is, in practical effect, merged in and consolidated with a larger municipality by the act of voters

of the larger city, as where the question of consolidation is referred to a popular vote of the electors of the consolidated territory, a provision which almost of necessity refers the question to the practical determination of the electors of the larger of the two bodies intended to be consolidated."

In *Wheeler School Dist. v. Hawley* (1943), 18 Wash. (2d) 37, 137 Pac. (2d) 1010, the court was confronted with a challenge similar to that raised here. It said:

"The result of the election was seventy votes for and thirty-nine against the proposal. However, in the Wheeler district, the vote was three for and thirty-two against the proposal. It is to be noted, therefore, that the result of the election, as a whole, is to bring the Wheeler school district into the proposed new district against the expressed will of its electorate. As a further consequence of the election, the Wheeler school district No. 152 will cease to exist as a municipal entity. All of its property will become the property of the proposed new district. Four thousand dollars on hand in its general fund will become an asset of the new district and used, together with twelve thousand dollars in the general fund of Moses Lake school district No. 159, 'to meet current operating expenses incident to the education of all pupils residing within the boundaries of said proposed new district.' " (p. 42.)

" 'In the absence of constitutional limitation upon the power of the legislature, it is also no objection to the valid exercise of the power that a smaller municipality is, in practical effect, merged in and consolidated with a larger municipality by the act of the voters of the larger city, as where the question of consolidation is referred to a popular vote of the electors of the consolidated territory, a provision which almost of necessity refers the question to the practical determination of the electors of the larger of the two bodies intended to be consolidated. A consolidation so effected, unless prohibited by some express provision of the constitution of the state, is not open to attack as depriving the taxpayers and electors of the smaller municipality of their vested rights or property without due process of law, either under the constitutional provision to that effect to be found in the

constitution of the state, or the similar provision to be found in the constitution of the United States.' " (p. 43.)

(Quoting from 1 Cooley, Constitutional Limitations (8th ed.), p. 395 *et seq.*) :

" 'Restraints on the legislative power of control must be found in the constitution of the state, or they must rest alone in the legislative discretion. If the legislative action in these cases operates injuriously to the municipalities or to individuals, the remedy is not with the courts. The courts have no power to interfere, and the people must be looked to, to right through the ballot box all these wrongs.' " (p. 45.)

"Ordinarily, whether new territory shall become a part of a municipal corporation is left to the decision of a majority of its inhabitants; otherwise, as in this instance, the inhabitants of the new territory and their property may be subjected to the will and debts of a more populous district. But such, by overwhelming weight of authority, is the legislative prerogative.

"That the act permits the Wheeler district and its school assets to be wholly absorbed by the Moses Lake district and subjects the property of its inhabitants to taxation to pay a proportion of the latter's debts, does not violate constitutional inhibitions against the taking of property without due process of law and the granting of special privileges and immunities." (p. 45.)

The residents and taxpayers have no vested inviolable rights in school-district government. *School Dist. v. Callahan, supra.* The right to vote in the consolidated district is afforded to appellants and others who resided in the detached area. Manifestly, the classification of unincorporated as against incorporated areas is not discriminatory or unreasonable. There is no denial of the equal protection of the law.

With regard to the contention that sec. 40.807 (2), Stats., is arbitrary and discriminatory in providing that city school districts can be abolished and common school districts created, or that there may be a continuance of a city school district

under special fiscal controls by officers of respective towns, villages, or cities involved, each such officer having one vote for each $200,000 of equalized valuation of the whole district which is within his municipality, the court below determined that there was no merit to such claim. It appears that the proportional representation directed is not unreasonable or arbitrary. It was clearly within the authority of the legislature to have so provided. The court's decision in this regard is sustained.

A further issue raised by appellants concerns the constitutionality of sec. 40.53 (2) and (6), Stats. 1951. It is to be noted that sec. 40.53, Stats. 1951, was changed to sec. 40.809, Stats. 1953, and that sub. (6) of sec. 40.53, Stats. 1951, was changed in 1953 to sub. (4), sec. 40.809.

Sec. 40.809, Stats. 1953, delineates the powers and duties of the board of a city school district. Sub. (4) of sec. 40.809 provides that the board:

"Select and acquire sites, employ architects and engineers for the preparation of plans and specifications for school buildings and adopt the same, but deeds and leases taken shall be in the name of the city, and the title to all school property shall vest in the city."

It is contended that the statute forever prohibits any future reorganization or change of boundary of this school district by the municipal officers of the town of Greenfield or the village of West Milwaukee as authorized by sec. 40.06, Stats., since the title to the school property will vest in the city of West Allis. Sec. 40.06 authorizes the creation, dissolution, and reorganization of school districts by a town or village board or council of a city of the second, third, or fourth class. The taxpayers of the village of West Milwaukee as a village entity and of the town of Greenfield as a town entity have no inviolable vested interest in this matter. *School Dist. v. Callahan, supra.* As has heretofore been determined, statu-

tory procedure of this kind does not offend against the guarantee of equal protection of the laws. Sec. 66.03 (2) provides that when territory is transferred in any manner provided by law from one municipality (school district, town, village, or city) to another, there is assigned to such other a proportion of the assets and liabilities as directed. Sec. 66.03 (3) provides that the right to possession and control of all school buildings and school sites shall pass to the municipality to which the territory is attached immediately upon the detachment becoming effective. A city school district may organize, or be abolished and a common district may be created by vote of officers of affected cities, towns, or villages. Sec. 40.807. Appellants' objection in this regard cannot be sustained.

Appellants complain that the Joint School Committee did not act either in accordance with a plan or with consideration of the financial status of the districts involved, as required under sec. 40.303, Stats. 1951. As earlier pointed out herein, sec. 40.303, Stats. 1951, was repealed and did not exist when the present proceedings for the territory involved were instituted. Appellants' contention in this regard is without merit.

*By the Court.*—The orders of the court appealed from are affirmed.